FILED

DEC 2 6 2007  NF

DEC 26 2007

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ILLINOIS EASTERN DIVISION

| | | |
|---|---|---|
| CLARK CONSULTING, INC. | § | |
| Plaintiff, | | 07CV 7231 |
| v. | | JUDGE SHADUR |
| R. SCOTT RICHARDSON, | § | MAGISTRATE JUDGE ASHMAN |
| Defendant. | § | Jury Trial Requested. |
| | § | |
| | § | |

## PLAINTIFF'S ORIGINAL COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiff, Clark Consulting, Inc. ("Clark" or the "Company"), for its Complaint for Injunctive Relief and Damages against Defendant R. Scott Richardson ("Richardson" or "Defendant"), hereby states as follows:

## NATURE OF ACTION

Plaintiff brings this suit for claims based on Richardson's (1) breach of the Illinois Trade Secret Act, (2) misappropriation of trade secrets and other confidential information, (3) breach of fiduciary duty and/or the duty of loyalty, (4) equitable estoppel, and (5) breach of contract.

## PARTIES

1.    Clark is a corporation duly organized and existing under the laws of the State of Delaware and having offices and its principal place of business at 2100 Ross Avenue, Dallas, Texas 75201.

2.      Richardson is an individual over 18 years of age residing in the state of Illinois, at 3023 Long Common Parkway, Elgin, Illinois, 60123. Richardson has agreed to accept service of process upon his attorney, Jeffrey Bakker, Esq., Neal, Gerber & Eisenberg, LLP, Two North LaSalle Street, Suite 2200, Chicago, Illinois 60602.

## JURISDICTION AND VENUE

3.      This Court has diversity jurisdiction over this action under 28 U.S.C. § 1332 because this is an action between a Delaware citizen, Clark, and an Illinois citizen, Richardson, and because the matter in controversy exceeds $75,000, exclusive of interest and costs.

4.      Venue is proper in this district under 28 U.S.C. § 1391(a) because Richardson is subject to personal jurisdiction in and resides in this district. Venue is also proper pursuant to 28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred in this district.

## FACTUAL ALLEGATIONS

### HOW CLARK OPERATES

5.      Clark is in the business of, among other things, designing and implementing nonqualified executive and director employee benefit plans and Bank-owned Life Insurance ("BOLI") policies, and providing administrative services to clients associated with the implementation of such plans.

6.      Clark's business relies heavily on its expertise in financial and technical legal requirements for benefit plans including BOLI policies, which enables Clark to increase shareholder value for the benefit of its clients.

7.      Throughout its history, since 1967, Clark's commercial success has resulted from its ability to advise its clientele on the impact of changing tax and regulatory requirements.

8.     Clark's Protectable Interest: Confidential, Proprietary and Trade Secret Information

9.     In connection with the development of it business, Clark has expended substantial time, labor and money, an amount which is not quantifiable, to research and develop certain confidential, proprietary and trade secret information, which includes its proprietary business methods and strategies, contract information, pricing methods and information, operating procedures, financial information, product information, legal advice and attorney/client privileged information, confidential consultant training information, "TOPS" reports, trade secret tax and benefit formulaic templates and data, modeling systems, confidential current client and prospect client data, and client proposals ("Confidential Information").

10.     Clark has taken substantial measures and exercised due diligence to prevent its Confidential Information from becoming available to persons other than those selected by it to have access to this information in order to further its business. These actions include, among other things, non-disclosure and non-solicitation agreements signed by its employees, restricted employee access to files, and disclosure of information pertinent only to the employee's job functions.

11.     Clark's Confidential Information is not available to its competitors through public sources; as such, a competitor would need to expend similar time and other investment in order to obtain the competitive advantage this information affords Clark. Even if another executive benefits provider and administrator undertook the significant time, effort and expense of generating a similar database, that product would not contain the same data as Clark's Confidential Information contains.

12.     The Confidential Information is extremely valuable, could not be obtained from any other public source, was developed by Clark at great expense, is continually updated by Clark at continued substantial expense, and is one of Clark's main assets.

13.     Richardson's Employment By Clark as Its Legal Counsel

14.     Richardson was employed by Clark from February 5, 2000 to September 10, 2007, when he voluntarily terminated his employment.

15.     From February 1, 2001 to July 1, 2005, Richardson was employed as legal counsel in Clark's Banking Practice ("Legal Counsel").

16.     As Legal Counsel, Richardson had the following duties and responsibilities, although this list is not comprehensive of all the duties Richardson performed: managing litigation and other corporate legal issues; negotiating sales contracts, non-solicitation agreements and other business contracts; and supporting sales in the form of legal research and drafting non-qualified deferred compensation agreements.

17.     As Legal Counsel, Richardson owed Clark certain fiduciary duties, including the duty of loyalty.

18.     As Legal Counsel, Richardson either drafted and/or had access to and utilized a wide variety of Clark's Confidential Information.

19.     As Legal Counsel, Richardson drafted the "Clark Consulting - Banking Practice Non-disclosure and Non-solicitation Agreement" (the "Non-Disclosure/Non-Solicitation Agreement"), a true and correct copy of which is attached hereto as Exhibit A.

4

20.    Clark's consultants, their salespersons, were required to sign the Non-Disclosure/Non-Solicitation Agreement to protect, among other things, Clark's Confidential Information, including its trade secrets, current and prospective client lists, and other confidential information.

21.    As Legal Counsel, Richardson was responsible for implementing the Non-Disclosure/Non-Solicitation Agreement, and ensuring, among other things, that Clark's consultants signed it.

22.    As an employee of Clark, either as Legal Counsel or otherwise, Richardson was additionally required to sign an Employee Confidentiality Agreement (the "Confidentiality Agreement"), a true and correct copy of which is attached hereto at Exhibit B.

23.    Clark's consultants, their salespersons, were required to sign the Confidentiality Agreement to identify and protect, among other things, Clark's Confidential Information, including its trade secrets, current and prospective client lists, and other confidential information. Paragraph four (4) of the Confidentiality Agreement entitles Clark to an injunction restraining Richardson from violations thereof.  Exhibit B, p. 2, paragraph 4.

24.    Richardson's Subsequent Employment as a Non-Lawyer Consultant

25.    Beginning on July 1, 2005, after drafting and implementing the Non-Disclosure/Non-Solicitation Agreement for use by Clark with consultants, Richardson himself moved from his role as Legal Counsel to that of consultant with Clark, although the transition of Richardson's duties required that he continue to fulfill some legal functions for a short time after July 1, 2005.  In his new role as a consultant, however, Richardson began marketing and selling Clark's services to clients and potential clients, including executive benefit plans, including BOLI policies.

26.     As a consultant, Richardson was required to enter into the Non-Disclosure/Non-Solicitation Agreement for the protection of Clark's Confidential Information.  Richardson signed the Non-Disclosure/Non-Solicitation Agreement on March 14, 2005, *before* he moved into the role of consultant with Clark.

27.     However, before Richardson signed the Non-Disclosure/Non-Solicitation Agreement, Richardson removed several phrases of the Non-Disclosure/Non-Solicitation Agreement. To wit, Clark's initial draft of the Non-Disclosure/Non-Solicitation Agreement, and the version Clark believes and alleges other consultants signed, contained several statements outlining the non-illusory consideration the consultant would receive in exchange for the restrictive covenants contained in the agreement. The version executed by Richardson, however, had those phrases conspicuously removed, in addition to other changes Richardson made to the Non-Disclosure/Non-Solicitation Agreement.

28.     Richardson's Unauthorized Access and Downloading of Clark's Confidential Information

29.     After signing the Confidentiality Agreement and the amended Non-Disclosure/Non-Solicitation Agreement, and in Richardson's new role as a consultant, as well as in his prior role as Legal Counsel, Richardson became knowledgeable about unique and competitively valuable confidential information pertaining specifically to Clark's clients and potential clients, information about which he would have had no knowledge but for his employment with Clark.

30.     Shortly before he voluntarily terminated his employment, from August 1, 2007 through September 10, 2007, Richardson improperly accessed at least 22 electronic files, containing Confidential Information from his work laptop computer which was both issued and owned by Clark.  Many of the files Richardson improperly accessed were housed on Clark's "L Drive," a storage drive for Clark's internal legal documents.

31.     These files were improperly accessed by Richardson in his consultant capacity at Clark.  At the time of his access of these files, Richardson no longer had any legal duties for Clark, having long since completed the transition to his consultant-only position.  The files on the L Drive are intended to be accessed by only those at Clark with a business reason to access them.  As Richardson was no longer employed in a legal capacity with Clark, he had no business reason to gain access.

32.     Richardson did, however, gain access to the L Drive, enabling him to view legal documents and materials.  Much, if not all of the materials accessed and downloaded by Richardson were attorney-client privileged and sensitive documents.

33.     At the time Richardson improperly accessed Clark's Confidential Information, he did not notify Clark that he had engaged in such unauthorized access of the information, nor was Clark otherwise aware of Richardson's conduct.  Clark became aware that Richardson engaged in the unauthorized access of its Confidential Information only after Richardson voluntarily terminated his employment.

34.     Clark Reminded Richardson of His Legal Obligations

35.     On or about September 10, 2007, Richardson notified Clark of his intent to immediately terminate his employment and begin his own company competing directly with Clark in the BOLI market.

7

36.    In a letter dated September 12, 2007, Clark acknowledged Richardson's resignation and reminded Richardson of his obligations under the Non-Disclosure/Non-Solicitation Agreement, including Richardson's confidentiality and non-disclosure duties. A true and correct copy of such letter is attached hereto as Exhibit C.

37.    Richardson Violated His Legal Obligations By Soliciting Clark's Current and Prospective Clients and Misappropriating Clark's Confidential Information and Trade Secrets

38.    Notwithstanding this reminder, Richardson violated Clark's rights.    Upon information and belief, Richardson accepted a position with an Executive Benefits and BOLI firm, named Executive Benefit Options, LLC ("EBO"). EBO's website is *www.eboptions.net*, which identifies Richardson as one of two Managing Members of EBO, and further states that Richardson is the "former head of Legal Services with Clark Consulting." *See*, Richardson EBOptions.net biography, attached hereto as Exhibit D.

39.    As a Managing Member of EBO, Richardson has solicited business from Clark's clients and prospective clients, in violation of his legal duties to Clark, in violation of the Non-Disclosure/Non-Solicitation Agreement. As an example, Richardson has solicited Forest Park National Bank & Trust Co., a former Clark client that Richardson worked with during his tenure with Clark, and worked a 1035 exchange in violation of the Non-Disclosure/Non-Solicitation Agreement.

40.    Such solicitation violates Paragraphs 3(a) and 3(b) of the Non-Disclosure/Non-Solicitation Agreement, which state that for a period of twelve (12) months after the termination of Richardson's employment with Clark, that he shall not: (a) "[d]irectly or indirectly, solicit away, or facilitate the solicitation away, from the Company of any Prospective Client of the Company; (b) [d]irectly or indirectly, solicit away, or facilitate the solicitation away, from the

8

Company of any Client of the Company or induce same to limit, alter or reduce its relationship with the Company."

41.     Further, upon information and belief, Richardson has misappropriated Confidential Information that he accessed without authorization from Clark's systems, including attorney-client privileged information removed from the L Drive.  Such misappropriation violates both the Confidentiality Agreement and the Non-Disclosure/Non-Solicitation Agreement.

42.     To Clark's knowledge, Richardson has specifically targeted clients and prospective clients about whom he is aware because of his misappropriation of Confidential Information.

43.     To Clark's knowledge, Richardson has sent form letters to Clark's clients and prospective clients because taking that action gives the impression that he is simply using publicly available data to notify prospective EBO customers of the entity for which he is a Managing Member, and the services that he believes he is able to provide.  The reality, however, is far more sinister -- should any such target contact Richardson by virtue of the form letter, or a phone call, or whatever other method Richardson is utilizing to make contact with prospects, he has at his disposal non-public client identifying information owned by Clark that he has misappropriated to effectively solicit the target's business.

44.     The Confidential Information Richardson has stolen could be used to, among other things, recreate a proposal that another Clark consultant, not Richardson, made to the prospective client using information the prospect has already provided to Clark, and that Clark has analyzed and used its expertise to evaluate.  In this way, Richardson has the benefit of

knowing exactly what Clark has proposed, why they made the proposal, and the tax and other ramifications of the proposal.

45.     Nor could this information be recreated by Richardson if he simply understood the parameters of the proposal, or by using publicly available data. This information is unique, and the clients and prospective clients themselves do not even have access to the analyses Clark performs when it makes a proposal. For the most part, this is internal data shared among those at Clark with a need to know only. Simply put, by virtue of his misappropriation of Clark's Confidential Information, Richardson has the ability to take a significant, and anticompetitive, shortcut to put himself and EBO in an advantageous position for which Clark should be the beneficiary.

46.     Using this Confidential Information, Richardson could offer clients and prospective clients discounts to place business with him or EBO, and to discontinue doing business with Clark or curtail their business relationships with Clark. But for his access to the Confidential Information he misappropriated, Richardson would have no way to replicate what Clark has analyzed and "costed" out for its proposals.

47.     By this Complaint for Injunctive Relief and Damages, Clark does not seek to stymie competition in the marketplace. However, the data that Clark creates is unique and proprietary to Clark's business. What Clark seeks, among other things, is to enjoin Richardson from trading on information that he did not bear the expense of creating. Clark cannot allow a former employee to take and use information that provides Clark a competitive advantage as to other similarly-situated benefits providers.

48.     To permit Richardson to use Clark's trade secret information, attorney/client privileged documents, and other confidential clientele information acquired both during Richardson's employment and as a result of his last minute scouring of Clark's computer system would deprive Clark of its efforts to develop business, confidential client lists, and prospective customers.

## COUNT I - BREACH OF THE ILLINOIS TRADE SECRET ACT

49.     Clark incorporates by reference the allegations in Paragraphs 1-42 above.

50.     There has at all pertinent times been in effect in the State of Illinois an act known as the "Illinois Trade Secrets Act," 765 ILCS 1065/1 et seq. (1988) (formerly found at Ill. Rev. Stat. ch. 140, 351).

51.     The Trade Secret Act defines "trade secrets" as:

information, including but not limited to, technical or non-technical data, a formula, pattern, compilation, program, device, method, technique, drawing, process, financial data, or list of actual or potential customers or suppliers, that:

(1) is sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from its disclosure or use; and

(2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy or confidentiality.

52.     The Trade Secrets Act defines the term "misappropriation" as:

(1) acquisition of a trade secret of a person by another person who knows or has reason to know that the trade secret was acquired by improper means; or

(2) disclosure or use of a trade secret of a person without express or implied consent by another person who:

(A) used improper means to acquire knowledge of the trade secret; or

(B) at the time of disclosure or use, knew or had reason to know that knowledge of the trade secret was:

(I) derived from or through a person who utilized improper means to acquire it;

(II) acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use; or

(III) derived from or through a person who owed a duty to the person seeking relief to maintain its secrecy or limit its use; or

(C) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired by accident or mistake.

53.    The Trade Secrets Act defines the term "improper means" as:

includ[ing] theft, bribery, misrepresentation, breach or inducement of a breach of a confidential relationship or other duty to maintain secrecy or limit use, or espionage through electronic or other means. Reverse engineering or independent development shall not be considered improper means.

54.    Clark sought to protect its Confidential Information from disclosure from, among other things, the use of the Non-Disclosure/Non-Solicitation Agreement, drafted by Richardson, and the Confidentiality Agreement.

55.    Richardson intentionally and without permission accessed and took from Clark trade secret, confidential and proprietary information.

56.    This information was used by Richardson to assist in the start-up, development and continued operation of EBO, a direct competitor of Clark.

57.    Clark's Confidential Information, improperly obtained by Richardson, is sufficiently secret to derive economic value from, is not generally known to others, and cannot be readily ascertained from any other source.

58.    Clark at all times had a protectable business interest in these documents and has sought to maintain and protect its protectable interest.

59.    Richardson has obtained and used or disclosed this Confidential Information in violation of a fiduciary, confidential and/or contractual relationship with Clark.

60.    Richardson misappropriated Clark's trade secrets knowingly, willfully, maliciously, intentionally, and in bad faith.

61.    The Trade Secrets Act empowers this Court to enjoin Richardson's actual, inevitable or threatened misappropriation of Clark's trade secrets (765 ILCS 1065/3); to award damages, including "both the actual loss caused by the misappropriation and the unjust enrichment caused by misappropriation that is not taken into account in computing actual loss" (765 ILCS 1065/4); and to award Clark its attorneys' fees for willful and malicious misappropriation (765 ILCS 1065/5).

WHEREFORE, Clark prays that this Court enter an order:

a.    Enjoining and restraining Richardson, and anyone working in concert with him, pursuant to the Trades Secrets Act, from disclosing, misappropriating, or using any trade secrets of Clark;

b.    Requiring Richardson, and anyone acting in concert with him, to immediately turn over without keeping any copies of any and all Clark documents and Confidential Information;

c.    Awarding Clark compensatory damages including the actual loss by the misappropriation in an amount to be proved at trial;

d.    Awarding Clark exemplary damages, given Richardson's willful and malicious conduct;

e.      Awarding Clark its attorneys' fees and costs incurred in this action; and

f.      For such other and further relief as the Court deems necessary and just.

## COUNT II - BREACH OF FIDUCIARY DUTY AND THE DUTY OF LOYALTY

62.    Clark incorporates by reference the allegations in Paragraphs 1-55 above.

63.    As both an employee and, importantly, Legal Counsel, Richardson owed Clark fiduciary duties and a duty of loyalty and fairness, which included a duty not to actively exploit his position with Clark for his own personal benefit, or hinder the ability of Clark to compete.

64.    Richardson breached his fiduciary duties and legal obligations, , to Clark by accessing and misappropriating trade secret, confidential, and/or proprietary information directly prior to his resignation in order to form EBO.

65.    Richardson further breached his fiduciary duties and legal obligations to Clark by then using this Confidential Information to solicit business for himself and/or EBO.

66.    Richardson's breach has caused injury to Clark in its efforts to develop business, maintain and develop confidential client lists, and develop prospective clients.  Richardson's breach has further caused Clark injury in that Richardson has improperly accessed and stolen trade secret, confidential and proprietary information for Richardson's personal use. Richardson's actions have proximately caused, and unless enjoined, will continue to cause irreparable injury to lark for which Clark has no adequate remedy at law.

WHEREFORE, Clark prays that this Court enter an order:

a.      Ordering Richardson to disgorge and forfeit any and all compensation paid to him during the period that he was in breach of his fiduciary duties to Clark, along with all other relief that this Court deems necessary and just;

14

b.    Enjoining and restraining Richardson, and anyone acting in concert with him, from disclosing, misappropriating, or using any of Clark's Confidential Information;

c.    Requiring Richardson, and anyone acting in concert with him, to immediately turn over all originals and copies of any and all Clark Confidential Information;

d.    Awarding Clark compensatory damages;

e.    Awarding Clark exemplary damages, given Richardson's willful and malicious conduct;

f.    Awarding Clark its costs incurred in this action; and

g.    For such other and further relief as the Court deems necessary and just.

## COUNT III - EQUITABLE ESTOPPEL

67.    Clark incorporates by reference the allegations in Paragraphs 1-63 above.

68.    Richardson, an attorney fully aware of the legal ramifications of contract law, signed the Confidentiality Agreement.

69.    Richardson drafted the Non-Disclosure/Non-Solicitation Agreement for the benefit of Clark to protect, among other things, Clark's trade secret and/or confidential information.

70.    Before assuming a role as a consultant subject to the strictures of the Non-Disclosure/Non-Solicitation Agreement, Richardson modified the agreement to make it substantially more beneficial to Richardson.

71.    Richardson, an attorney fully aware of the legal ramifications of contract law, signed the Non-Disclosure/Non-Solicitation Agreement.

72.     Richardson breached his common law and contractual duties to Clark by accessing and stealing Clark's Confidential Information prior to his resignation in order to further his own personal business.

73.     Richardson breached the very agreement he drafted by then using Clark's confidential client information to further his own personal business.

74.     Richardson should be equitably estopped from claiming that the Non-Disclosure/Non-Solicitation Agreement that he drafted in his capacity as general counsel for Clark is unenforceable.

75.     Further, Richardson should be equitably estopped from using, in any way, the trade secret, confidential or proprietary information that he improperly stole from Clark.

76.     Richardson's actions have caused injury to Clark in its efforts to develop business, maintain and develop confidential client lists, and develop prospective customers. Richardson's actions have further caused Clark injury in that Richardson has improperly accessed and stolen trade secret, confidential and proprietary information for Richardson's personal use. Richardson's actions have proximately caused, and unless enjoined, will continue to cause irreparable injury to lark for which Clark has no adequate remedy at law.

WHEREFORE, Clark prays that this Court enter an order:

a.      Enjoining and restraining Richardson, and anyone acting in concert with him, from disclosing, misappropriating, or using any of Clark's Confidential Information;

b.      Requiring Richardson, and anyone acting in concert with him, to immediately turn over all originals and copies of any and all Clark Confidential Information;

c.      Awarding Clark compensatory damages;

　　　　d.　　Awarding Clark exemplary damages, given Richardson's willful and malicious conduct;

　　　　e.　　Awarding Clark its and costs incurred in this action; and

　　　　f.　　For such other and further relief as the Court deems necessary and just.

## COUNT IV - BREACH OF CONTRACT
## (EMPLOYEE CONFIDENTIALITY AGREEMENT)

77.　　Clark incorporates by reference the allegations in Paragraphs 1-70 above.

78.　　Clark and Richardson entered into the Confidentiality Agreement, a valid and enforceable contract, on January 25, 2001.

79.　　Clark fully performed its obligations under the Confidentiality Agreement with Richardson.

80.　　The Confidentiality Agreement remains valid and in full force and effect.

81.　　Richardson breached the Confidentiality Agreement by improperly accessing and taking trade secret and/or confidential information from Clark to facilitate his solicitation of Clark's clients and prospective clients.

82.　　Richardson's breach has caused injury to Clark in its efforts to develop business, maintain and develop confidential client lists, and develop prospective customers. Richardson's breach has further caused Clark injury in that Richardson has improperly accessed and stolen trade secret, confidential and proprietary information for Richardson's personal use. Richardson's actions have proximately caused, and unless enjoined, will continue to cause irreparable injury to lark for which Clark has no adequate remedy at law.

　　　　WHEREFORE, Clark prays that this Court enter an order:

　　　　a.　　Enjoining Richardson from breaching the Confidentiality Agreement;

b.      Enjoining and restraining Richardson, and anyone in active concert with him, from directly or indirectly soliciting or inducing any clients or prospective clients of Clark from purchasing products from any other source or to withdraw or cancel their business with Clark for a period of twelve (12) months or such other length of time as the Court deems fair and reasonable from the date of this Order;

c.      Enjoining and restraining Richardson, and anyone in active concert with him, from disclosing, copying, or using any Clark Confidential Information;

d.      Requiring Richardson, and anyone acting in concert with him, to immediately turn over without keeping any copies of any and all Clark documents and Confidential Information;

e.      Order an accounting of all revenues and other benefits Richardson has derived, directly or indirectly, from his breaches of the Confidentiality Agreement;

f.      Awarding Clark its costs incurred in this action; and

g.      For such other and further relief as the Court deems necessary and just.

## COUNT V - BREACH OF CONTRACT
## (NON-DISCLOSURE AND NON-SOLICITATION AGREEMENT)

83.      Clark incorporates by reference the allegations in Paragraphs 1- 76 above.

84.      Clark and Richardson entered into the Non-Disclosure/Non-Solicitation Agreement, a valid and enforceable contract, on March 14, 2005.

85.      Clark fully performed its obligations under the Non-Disclosure/Non-Solicitation Agreement with Richardson.

86.      The Non-Disclosure/Non-Solicitation Agreement remains valid and in full force and effect.

18

87.    Richardson breached the Non-Disclosure/Non-Solicitation Agreement by improperly accessing and taking trade secret and/or confidential information from Clark to facilitate his solicitation of Clark's clients and prospective clients.

88.    Richardson's breach has caused injury to Clark in its efforts to develop business, maintain and develop confidential client lists, and develop prospective customers. Richardson's breach has further caused Clark injury in that Richardson has improperly accessed and stolen trade secret, confidential and proprietary information for Richardson's personal use. Richardson's actions have proximately caused, and unless enjoined, will continue to cause irreparable injury to lark for which Clark has no adequate remedy at law.

WHEREFORE, Clark prays that this Court enter an order:

a.    Enjoining Richardson from breaching the Non-Disclosure/Non-Solicitation Agreement;

b.    Enjoining and restraining Richardson, and anyone in active concert with him, from directly or indirectly soliciting or inducing any clients or prospective clients of Clark from purchasing products from any other source or to withdraw or cancel their business with Clark for a period of twelve (12) months or such other length of time as the Court deems fair and reasonable from the date of this Order;

c.    Enjoining and restraining Richardson, and anyone in active concert with him, from disclosing, copying, or using any Clark Confidential Information;

d.    Requiring Richardson, and anyone acting in concert with him, to immediately turn over without keeping any copies of any and all Clark documents and Confidential Information ;

e.   Order an accounting of all revenues and other benefits Richardson has derived, directly or indirectly, from his breaches of the Non-Disclosure/Non-Solicitation Agreement;

f.   Awarding Clark its costs incurred in this action; and

g.   For such other and further relief as the Court deems necessary and just.

Dated:  December 26, 2007

_____
Thomas S. Bradley (06199054)
Gregory R. James, Jr. (06198667)
Laner, Muchin, Dombrow, Becker,
   Levin and Tominberg, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60610
(312) 467-9800
312-467-9479


**HUNTON & WILLIAMS LLP**

David C. Lonergan
Texas State Bar No. 12513500
Alan J. Marcuis
Texas State Bar No. 24007601
Sarah E. Wallner
Fountain Place
1445 Ross Avenue; Suite 3700
Dallas, Texas 75202-2799
(214) 979-3000
(214) 880-0011 (fax)

PRO HAC VICE MOTION TO BE FILED

**ATTORNEYS FOR PLAINTIFF CLARK
CONSULTING, INC.**

## **JURY TRIAL DEMAND**

A jury trial is requested on all causes of action triable by jury.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing has been

served upon R. Scott Richardson, 3023 Long Common Parkway, Elgin, Illinois  60123, by

agreement on his attorney Jeffrey Bakker, Esq., Neal, Gerber, & Eisenberg, LLP., Two North

*Via messenger*

LaSalle Street, Suite 2200, Chicago, Illinois 60602, on this 26th day of December, 2007.

_____

Thomas S. Bradley

Thomas S. Bradley
Gregory R. James, Jr.
Laner, Muchin, Dombrow, Becker,
  Levin and Tominberg, Ltd.
515 North State Street, Suite 2800
Chicago, Illinois 60610
Telephone:  (312) 467-9800
Fax:  (312) 467-9479
Firm ID No. 06199054

## CLARK CONSULTING – BANKING PRACTICE
### NON-DISCLOSURE AND NON-SOLICITATION AGREEMENT

THIS NON-SOLICITATION AGREEMENT (the "Agreement") is made this ___3/14/05___, 2005, by and between Clark Consulting, Inc., through its Banking Practice with principal offices in Bloomington, Minnesota (for itself, its predecessors, successors, subsidiary and affiliated entities, shareholders, officers, directors, executors, administrators, agents, fiduciaries, legal representatives, insurers, employee benefit plans, employee benefit plan fiduciaries, Employees, former Employees, and owners, all individually and in their official capacities), (all together referred to as the "the Company"), and Scott Richardson a resident of the state of Minnesota (the "Employee").

The Employee's position and responsibilities require access to confidential information and trade secrets developed by or owned by the Company. The Company desires to protect such confidential information and trade secrets, and the Company's client and prospect base, staff and the proprietary and confidential nature of its systems, ideas, and work products. Therefore, the Company and Employee hereby mutually agree as follows:

1.    Access to Confidential Information. Upon execution of this Agreement, and in consideration for his/her promises herein, the Company shall provide to Employee, and Employee shall receive access to the confidential and trade secret information of the Company.

2.    Nondisclosure. Employee acknowledges that he/she shall not disclose any Proprietary, Confidential or Trade Secret Information of the Company (as those terms are defined in the Company's Intellectual Property and Confidentiality Agreement) except at the request of, and for the purposes defined by, the Company. Proprietary, Confidential or Trade Secret Information of the Company shall include, but shall not be limited to, material marked as such by the Company.

3.    Non-solicitation Covenants. In order to protect the Company's significant investment in its Proprietary, Confidential and Trade Secret Information, Employee agrees the he/she will not, during his/her employment and for twelve (12) months following termination of employment for any reason other than involuntarily termination through a reduction in workforce:

    a.    Directly or indirectly, solicit away, or facilitate the solicitation away, from the Company of any Prospective Client of the Company;

    b.    Directly or indirectly, solicit away, or facilitate the solicitation away, from the Company of any Client of the Company or induce same to limit, alter or reduce its relationship with the Company;

    c.    Directly or indirectly, induce away, or facilitate the inducement away, from the Company of any personnel of the Company or interfere with the faithful discharge by such





Exhibit

A

ALL-STATE LEGAL®

Page 1 of 3

personnel of their contractual and fiduciary obligations to the Company and its Clients; and

d.  Directly or indirectly, induce or attempt to induce or facilitate the inducement of (i) any insurance company to terminate or alter its relationship with the Company or (ii) any banking association or other trade organization to terminate or alter its relationship with the Company.

"Client" shall mean any person or entity for whom the Company performed services or provided products and with whom Employee, or the employees under his/her supervision or direction, had communications on behalf of the Company within the twelve (12) months immediately preceding the termination of the Employee's employment with the Company.

"Prospective Client" shall mean any person or entity to whom the Employee, or the employees under his/her supervision, submitted, prepared or presented, or assisted in the submission, preparation, or presentation of, a proposal, during the eighteen (18) month period preceding his/her or her termination.

4.  List of Prospects. The Employee shall be responsible for keeping all client and prospective client lists up-to-date using PCMS or such other tools and procedures as the Company, in its sole discretion, may require.

5.  Property of the Company. The Employee acknowledges that he/she shall have the opportunity to inspect and use property of the Company in the scope of his/her employment. The Employee hereby agrees that such property shall remain the exclusive property of the Company, and the Employee shall have no right or proprietary interest in such property, including, without limitation, the Employee's or the Company's customer and supplier lists, contract forms, books of account, computer programs and similar property.

6.  Breach of Agreement; Calculation of Damages. In the event of the Employee's breach of this Agreement, in addition to any other remedies to which the Company shall be entitled, the Employee agrees to pay damages to the Company according to the following schedule:

a.  For any sale, within twelve (12) months following the Employee's termination, to a Client or Prospective Client of any product or service offered by the Company's Banking Practice, where the Employee receives any benefit, directly or indirectly, the Company shall be entitled to a percentage of the gross fees and commissions (first-year and renewal) from such sale, as follows:

  i.  Up to six (6) months following termination, sixty percent (60%); and
  ii. From six (6) months through twelve (12) months following termination, forty percent (40%).

The Company shall have no continuing post-sale service responsibilities or obligations for such sale. For purposes of this Agreement, a "sale" shall be deemed to occur upon the earlier of (i) approval by a Client's or Prospective Client's board of directors of the purchase of the product, or (ii) the wiring of premium to an insurance carrier by the Client or Prospective Client.



b.    For a period of three (3) years following the Employee's termination, for any internal or external IRC §1035 exchange or upgrade of any product sold by the Company that (i) results in the loss of actual or expected renewal commissions by the Company and (ii) benefits the Employee in any way, directly or indirectly, the Company shall be entitled to sixty percent (60%) of the gross fees and commission (first-year and renewal) from such exchange. The Company shall have no continuing post-sale service responsibilities or obligations for such exchange.

7.    Subsequent Employment.    Employee acknowledges that he/she is obligated to notify any subsequent employer, or other entity with whom the Employee associates, of Employee's obligations under this Agreement following the termination of Employee's employment with the Company. Additionally, Employee specifically authorizes the Company to notify any such subsequent employer or entity regarding Employee's obligations under this Agreement following the termination of Employee's employment with the Company.

8.    Not an Employment Agreement. This Agreement is not a contract of employment for a definite term. Nothing in this Agreement modifies or is intended to modify the at-will status of the employment relationship between the Company and the Employee.

9.    Severability. If any portion of this Agreement is determined by a court to be unenforceable, the parties hereto expressly agree and request that the court modify such portion to allow it to be enforceable. All other provisions shall remain in effect.

10.    Controlling Law. This Agreement shall be construed under the laws of the state of Illinois.

11.    Successors and Assigns. The Company may assign its rights under this Agreement to any successor to its business (by merger, acquisition of substantially all of the Company's assets or otherwise), but Employee may not assign his/her rights or delegate his/her duties under this Agreement without the prior written consent of the Company. Employee understands and agrees that this Agreement shall be binding upon and inure to the benefit of the Company and its legal representatives, successors and assigns. Employee also understands and agrees that this Agreement shall be binding upon and inure to the benefit of Employee's heirs and executors or administrators.

IN WITNESS WHEREOF, the parties hereto have caused this Agreement to be executed by their duly authorized officers on the day and year first written above.

EMPLOYEE:

Employee's Signature

COMPANY:
Clark Consulting, Inc. – Banking Practice

By:
Title: VP, Sales Operations



**BANK COMPENSATION STRATEGIES**

*a division of Clark/Bardes*

## Employee Confidentiality Agreement

In consideration of my employment, continuing employment, promotion, or increase in compensation (as the case may be) by Bank Compensation Strategies, a division of Clark/Bardes Holdings, Inc., a Delaware corporation, or any of its subsidiaries, affiliated companies, successors or nominees thereof (the "Company"), and in consideration of sums paid to me by way of salary or other benefits, I and the Company hereby agree as follows:

1. (a) I will disclose promptly to the Company, every idea, method, process, design, discovery, improvement, computer program, copyrightable subject matter and invention (hereinafter the "Inventions") made, conceived or developed in who or in part, solely by me or jointly with others, during or after working hours.

(b) I hereby assign and agree to assign without payment to the company, to the extent permitted by government regulations, the entire right, title and interest, domestic and foreign, which I may have in such Inventions or a lesser interest therein, except as otherwise specifically agreed in writing by the Company.

(c) I further agree to sign all applications for copyrights or patent assignments, and other appropriate documents, domestic and foreign, and to perform all acts and to do all things necessary to make this Agreement effective.

(d) The Company agrees to bear all expenses which it causes to be incurred by me in assigning, obtaining, maintaining and enforcing said copyrights or patents, and further to pay me for any time which it may require of me subsequent to the termination of my employment.

(e) The obligations of the Paragraph 1 shall continue beyond the termination of my employment with respect to such Inventions, whether patentable or not, conceived or made by me during the period of my employment and shall be binding upon my assigns, executors, administrators and other legal representatives.

(f) I understand that utilization of such Inventions is in the sole discretion of the Company, and the Company is not obligated to develop any device or product thereunder.

October 1998



Exhibit

B

1

2. (a) During the period of my employment I will learn of and acquire confidential, proprietary or other privileged information of the Company and of other entities with which the Company does, or proposed to do, business, whether or not developed by me, relating to the products, specifications, processes, computer programs, drawings, know-how, trade secrets, customers, suppliers, developments, business, patents, equipment or supplies made, sold, used, developed or practiced by the Company in its business and by other entities in their businesses (hereinafter the "Trade Secrets").

(b) I agree to hold in strict confidence and not to disclose during my employment or thereafter to anyone outside the Company, or to make use of, except for the purpose of the Company, such Trade Secrets.

3. Upon termination of my employment, I agree to promptly deliver to the Company all records, files, drawings, documents, notebooks, blueprints, manuals, letters, notes, reports and copies thereof, and any and all other material of secret or confidential nature relating to the Company's business including material relating to the Inventions and the Trade Secrets, and which are in my possession or under my control. I acknowledge that all such records, files, etc. are the exclusive property of the Company.

4. In the event of a breach or threatened breach by me of the provisions of the Agreement, the Company shall be entitled to an injunction restraining me from violating the terms hereof, or from disclosing breach or threatened breach by me of the provisions of the Agreement, the Company shall to any person, firm, corporation, association or other entity, whether or not I am then employed by, or an officer, director, or owner thereof, any confidential, proprietary or privileged information, including but not limited to that which relates to any Inventions referred to in Paragraph 1 hereof and any Trade Secrets referred to in Paragraph 2 hereof. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies available to it for such breach or threatened breach, including recovery of damages from me. Both parties hereto recognize that the services to be rendered by me during the term of my employment are special, unique and of extraordinary character.

5. In the event that a provision of the Agreement is held invalid by a court of competent jurisdiction, the remaining provisions shall nonetheless be enforceable according to their terms. Further, in the event that any provision is held to be overly broad as written, such provision shall be deemed amended to narrow its application to the extent necessary to make the provision enforceable according to applicable law and enforced as amended.

6. No modification of this Agreement shall be valid unless made in writing and signed by the parties hereto.

7. Neither this Agreement nor any benefits hereunder are assignable by me, but the terms and provisions hereof shall inure to the benefit of the Company's successors and assigns.

*except to my heirs,*

*RSP  1/25/07        AS 1/8/01*

October 1998                                                                                    2

8. The Company's waiver or failure to enforce the terms of the Agreement or any similar agreement in one instance shall not constitute a waiver of its rights hereunder with respect to other violations of this or any other agreement.

9. This Agreement shall be constructed in accordance with and governed by the laws of the State of Minnesota.

10. Notwithstanding anything to the contrary stated herein, this Agreement does not apply to an invention for which no equipment, supplies, facility or trade secret information of the Company was used and which was developed entirely on my own time, and (1) which does not relate (a) directly to the business of the Company, or (b) to the Company's actual or demonstrably anticipated research or development, or (2) which does not result from any work performed by me for the Company.

I agree to the terms of this Employee Confidentiality Agreement as indicated by my signature below.

IN WITNESS WHEREOF, the parties hereto have executed the Agreement as of the date and year written below.

Employee Signature

R. Scott Richardson
Employee Printed Name

1/25/01
Date

Bank Compensation Strategies

By: _____

Its: _____

# CLARK CONSULTING.

2100 Ross Avenue, Suite 2200
Dallas, TX 75201-7906
www.clarkconsulting.com

214-871-8717 PHONE
214-720-6050 FAX

September 12, 2007

*Via Federal Express*

Mr. R. Scott Richardson
3023 Long Common Pkwy
Elgin, Illinois    60123

Dear Scott:

In an e-mail to Mike Schaefer dated Monday, September 10, 2007, you indicated your intent to terminate your employment with Clark Consulting, Inc. ("Clark") effective immediately. In light of your immediate termination, it is important that we remind you of your obligations under the Clark Consulting-Banking Practice Non-Disclosure and Non-Solicitation Agreement you signed on March 14, 2005 (the "Agreement").

The Agreement provides in part the following: (i) you may not use or disclose Clark's Proprietary, Confidential or Trade Secret Information (as defined in the Agreement) and, importantly, (ii) you may not, directly or indirectly, solicit away, or facilitate the solicitation away, from Clark of a Client or Prospective Client (as defined in the Agreement) or induce a Client to limit, alter or reduce its relationship with Clark. In the event you breach the Agreement, Clark shall be entitled to revenue from any sales to a Client or Prospective Client as further described in Paragraph 6 of the Agreement.

As you know, when Clark rolled out the template Non-Disclosure and Non-Solicitation Agreement from which your Agreement was created, the approach taken by Clark was intended to avoid the legal entanglements associated with seeking injunctive relief against former consultants who violated their non-competition or non-disclosure duties. Rather, the provisions of the template (and your Agreement) offered peace of mind to Clark in circumstances where Clark has facilitated (e.g., through research, meetings, expenses, payroll, goodwill, etc.) the Client or Prospective Client interaction by providing Clark with a revenue split in cases where a consultant terminates and later sells a product on behalf of a competitor.

In connection with your resignation, you stated to Mike Schaefer on September 11, 2007 that you intend to honor the non-solicitation provisions of the Agreement. Clark expects you to honor all of your commitments, including your continuing duty of confidentiality owed to Clark in relation to your services as legal counsel for the company. In the event of a breach of the terms of the Agreement or any other ongoing obligations, Clark will take whatever action is necessary to protect its interests, including seeking all damages, costs and attorney's fees. Pursuant to Paragraph 7 of the Agreement, Clark will provide a copy of this letter and the Agreement to Northwestern Mutual Life.



Exhibit

C

# CLARK CONSULTING.

Mr. R. Scott Richardson
September 12, 2007
Page 2

You may direct all questions you have regarding this letter to me.

Sincerely,

Susan Linder
*General Counsel*

Enclosure

cc:    Kurt Laning
       Mike Schaefer
       Northwestern Mutual Life

*Dear Scott — Good luck! in your. Stay in new role. touch ; Susc*



# R. Scott Richardson, JD



In 2007, Scott became a Managing Member of Executive Benefit Options (www.EBOptions.net), which specializes in the design, implementation and funding of nonqualified executive and director benefit plans.

Scott brings over 20 years of experience in the financial services and life insurance industries. Immediately prior to joining EBO, he was a leading consultant and former head of Legal Services with Clark Consulting. Scott has had extensive contact with bank regulatory agencies, and was involved in the development of customized benefit plans for dozens of banks throughout the country. This unique background provides Mr. Richardson with considerable expertise in the legal aspects of compensation, nonqualified benefits and bank-owned life insurance (BOLI)/corporate-owned life insurance (COLI) plan design.

Scott Richardson has addressed numerous banking groups on the topics of executive compensation, nonqualified benefits and BOLI. In addition, he has been quoted in various banking trade publications including *North Western Financial Review, Illinois Banker, Hoosier Banker* and *Wisconsin Community Banking News* regarding the impact of OCC Bulletin 2004-56.

Scott has a law degree from William Mitchell College of Law, St. Paul, Minnesota. He is a member of the Association for Advanced Life Underwriting (AALU) and is past president of the Twin Cities Society of Financial Services Professionals.

Scott Richardson has earned designations as a Chartered Life Underwriter (CLU) and Chartered Financial Consultant (ChFC), and holds Series 6, 7, 63, 65 and 24 licenses.

Scott Richardson is recognized as an Executive Benefits Specialist for Northwestern Mutual and works in the Bank-Owned (BOLI), and Corporate-owned (COLI) Life Insurance and Executive Benefits marketplace. Scott is affiliated with the Effner Financial Group in Downers Grove, Illinois.

Scott resides in Elgin, Illinois, with his family.



Exhibit

D